**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| RAMON GRAY, | ) | Case No. 1:23-CV-00222-DCN |
| | ) | |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| DOUGLAS FENDER, Warden, | ) | ARMSTRONG |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT & RECOMMENDATION** |

## I.    INTRODUCTION

Petitioner, Ramon Gray ("Mr. Gray"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Gray is serving a sentence of life without parole after being convicted of two counts of aggravated murder and one count of having weapons while under a disability.

Mr. Gray asserts four grounds for relief. Respondent ("Warden") filed an answer/return of writ on July 10, 2023. (ECF No. 9). Mr. Gray filed a traverse on August 16, 2023. (ECF No. 10). This matter was referred to me on April 24, 2023, under Local Rule 72.2 to prepare a report and recommendation on Mr. Gray's petition. (*See* ECF non-document entry dated April 24, 2023). For the foregoing reasons, I recommend that Mr. Gray's petition be DISMISSED. I further recommend that this Court not grant Mr. Gray a certificate of appealability. Finally, I recommend that the Court substitute Warden Misty Mackey as the

1

respondent for Warden Douglas Fender.[1]

## II.   RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Eighth District summarized the facts as follows:

{¶ 2} At approximately 2:30 a.m. on January 11, 2007, as Eddie Parker walked up to the B–5 Lounge and Deli in Cleveland, Ohio, he saw his younger brother, Andre Parker, and his brother's friend, Willie DeLoach, scuffling with two men in the parking lot. Eddie described the man fighting with his brother as wearing a black leather jacket and black baseball cap (later identified as Ramon) and the man fighting with DeLoach as wearing a white tee-shirt and a white skull cap with a small brim on it (later identified as Ramon's brother, Rufus Gray).

{¶ 3} Eddie saw the man fighting with his brother pull a weapon and then saw Andre run to his car. Eddie ran inside the B–5 Lounge and screamed for the owner to call 9–1–1 and then, as he watched through the windows, saw Ramon open the rear passenger door of his brother's car, and, with one hand on top of the car, aim the gun into the car and fire two shots into the vehicle. Moments later, Eddie saw what he described as a late-model, gray Oldsmobile exit the parking lot. As the car drove by, he saw two men in the vehicle and made eye contact with Rufus, the passenger in the car. He also got a partial license plate number of 4448.

{¶ 4} Eddie then went out to the parking lot, where he found his brother slumped back in the driver's seat of his car and DeLoach lying wounded in the parking lot. Both men died almost immediately; according to the coroner, Andre Parker died from a single gunshot wound to the right side of the chest and DeLoach died from a single gunshot

---

[1] Mr. Gray named Warden Douglas Fender as the respondent in his petition. (ECF No. 1). In the return of writ, respondent states that Mr. Gray is currently incarcerated at Lake Erie Correctional Institution, and that Warden Misty Mackey is the acting warden of that institution, and thus the proper respondent in this proceeding. (ECF No. 9, PageID # 66, n.1; *see also* https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A553858 (last accessed Jan. 27, 2025). I therefore recommend that the Court substitute Warden Misty Mackey for Warden Douglas Fender as the respondent in this proceeding.

wound to the left abdomen. The coroner also determined that both men had been shot with the same weapon.

{¶ 5} Rufus Gray was treated in the early morning hours of January 11, 2007, at the South Pointe Hospital Emergency Room for a laceration above his right eye. Ramon and Rufus's mother, Yolanda Gray, testified that she met Ramon and Rufus at the Emergency Room and saw them leave the hospital together in Ramon's car, which she identified as a late-model Oldsmobile.

{¶ 6} Later that day, police officer Michael Lawrence received a broadcast that described a possible suspect vehicle with the partial license plate number of 4448. Office Lawrence searched the BMV computer database with different lettered prefixes attached to the numbers 4448 and eventually determined that a gray, 1990 Oldsmobile with the license plate number EBG 4448 was registered to Ramon Gray.

{¶ 7} The Cuyahoga County Coroner's Officer subsequently identified DNA obtained from a white skull cap found at the scene as matching Rufus Gray's DNA profile. His DNA was also found on both victims. The police arrested him in September 2007, and shortly thereafter, Eddie identified Rufus from a photo array as the passenger he had seen in the gray Oldsmobile driving away from the B–5 immediately after the shooting.

{¶ 8} The police arrested Ramon in February 2008. After his arrest, Eddie identified Ramon in a physical line-up at police headquarters as the man who shot his brother. Subsequently, the police determined that three fingerprints lifted from above the rear passenger side door of the car Andre Parker was found in matched Ramon's prints.

(ECF No. 9-1, Exhibit 10); *State v. Gray*, No. 92303, 2010 WL 320481, 2010-Ohio-240 (8th Dist. Jan. 28, 2010).

## III.  PROCEDURAL HISTORY

### A.  <u>State Court Conviction</u>

On March 5, 2008, Mr. Gray was indicted in the Cuyahoga County Court of Common Pleas on: (1) two counts of aggravated murder with mass murder and firearm specifications in violation of O.R.C. §§ 2903.01(A) and 2941.145; and (2) one count of having weapons while under disability in violation of O.R.C. § 2923.13(A)(3). (ECF No. 9-1, Exhibit 1). On March 7, 2008, Mr. Gray pled not guilty to all charges. (ECF No. 9-1, Exhibit 2).

The case proceeded to trial. On September 26, 2008, the jury convicted Mr. Gray on

all counts and determined that he should be sentenced to life without the possibility of parole on the aggravated murder charges. (ECF No. 9-1, Exhibit 3). The court imposed a sentence of life without parole on both aggravated murder counts and also sentenced Mr. Gray to five years on the having weapons while under disability count, for an aggregate sentence of life without the possibility of parole. *Id.*

### B. Direct Appeal

On October 23, 2008, Mr. Gray, through counsel, timely filed a notice of appeal to the Eighth Appellate District. (ECF No. 9-1, Exhibit 4). In his appellate brief, Mr. Gray raised the following assignments of error:

1. The Appellant was denied due process and equal protection of law pursuant to the constitutions of the State of Ohio and the United States when his case was improperly assigned to a visiting judge.

2. Inaccurate penalty phase instructions that misguide the jury as to their duties under the law regarding consideration of sentencing options violate the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States.

3. The verdict and judgment below are against the manifest weight of the evidence.

4. The lower court erred and denied the appellant a fair trial when it allowed the jury to consider a non-existent "mass murder" specification.

5. The judgment and sentence finding Appellant guilty of the "mass murder" specification pursuant to R.C. 2929.04(A)(5) must be vacated as the jury never found that the two killings were part of a course of conduct.

6. The lower court erred and denied Appellant due process of law and a fair trial when it permitted display of heightened security measures in front of the jury when Appellant gave his unsworn statement.

7. Appellant was denied his Fifth Amendment right to due process of law by virtue of the denial of his request for appointment of an expert witness on eyewitness identification.

8. The lower court erred and denied Appellant a fair trial when it permitted the State to introduce prejudicial 'other acts' evidence during the sentencing phase.

4

9. Appellant was denied effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

(ECF No. 9-1, Exhibit 5).

On October 2, 2009, the Eighth Appellate District, acting *sua sponte*, remanded the appeal to the trial court because the sentencing entry failed to contain the means of conviction for each count and specification. (ECF No. 9-1, Exhibit 8). On October 23, 2009, the trial court entered a corrected sentencing entry, again sentencing Mr. Gray to life in prison without the possibility of parole. (ECF No. 9-1, Exhibit 9).

On January 28, 2010, the Eighth Appellate District affirmed Mr. Gray's conviction and sentence. (ECF No. 9-1, Exhibit 10). On February 26, 2010, Mr. Gray, acting *pro se*, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 9-1, Exhibit 11). In his memorandum in support of jurisdiction, Mr. Gray raised the following propositions of law:[2]

1. The Eighth District of Appeals erred by not remanding Appellant's case for failure of the Trial Court to issue proper Journal Entry authorizing the Assignment of the Visiting Judge to preside over his trial.

2. The Eighth District of Appeals erred by not remanding Appellant's case for failure of the Trial Court to issue proper penalty phase instructions that misguided the jury as to their duties under the law regarding consideration of sentencing options which violated Appellant's Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

3. The jury verdicts in Appellant's case were against the Manifest Weight of Evidence.

4. Appellant was deprived his Constitutional Rights to a Fair Trial and Due Process of Law when the Trial Court allowed the jury to consider a non-existent "mass murder" specification.

5. Appellant was denied Due Process of Law and a Fair Trial against his Constitutional Rights under the Ohio and United States Constitution when the Trial Court allowed a judgment and sentence of a "mass murder" specification

---

[2] Mr. Gray's propositions of law are presented verbatim.

pursuant to Ohio Revised Code 2929.04(A)(5) where the jury never found that the two killings were part of a course of conduct.

6. Appellant was denied Due Process of Law and a Fair Trial when the Trial Court erred in permitting a display of heightened security measures in front of the jury when Appellant gave his unsworn statement.

7. Appellant was denied his Fifth Amendment Right to Due Process of Law by virtue of the denial of his Request for Appointment of an Expert Witness on Eyewitness Identification.

8. Appellant was denied a Fair Trial when the Trial Court erred by permitting the State to introduce prejudicial 'Other Acts' Evidences during the sentencing phase of his trial.

9. Appellant claims he suffered from Ineffective Assistance of Counsel against his Sixth and Fourteenth Amendment Rights to the United States Constitution when Trial Counsel's performance fell below any reasonable standard and he was substantially prejudiced thereby said deficient performance.

(ECF No. 9-1, Exhibit 12). On May 26, 2010, the Ohio Supreme Court denied Mr. Gray leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (ECF No. 9-1, Exhibit 13).[3]

### C.  Petition for Post-Conviction Relief

On July 29, 2010, Mr. Gray, through new counsel, filed a motion for post-conviction relief pursuant to O.R.C. § 2953.21, asserting that: (1) the trial court lacked jurisdiction over the case because the case was assigned to a visiting judge; (2) Mr. Gray's rights were violated when the trial court denied his motion to appoint an expert on witness identification; and (3) Mr. Gray was denied his right to a fair trial because the court, the prosecution, and the defense referred to the specifications attached to the aggravated murder charges as "mass murder" specifications rather than "course of conduct" specifications. (ECF No. 9-1, Exhibit 14).

---

[3] While not included in the state court record filed in this proceeding, the Warden notes that Mr. Gray filed a federal habeas action in this Court in May 2011, raising the same claims he raised in his direct appeal. *See Gray v. Tibbals*, No. 1:11-cv-1056-DCN (N.D. Ohio) (ECF No. 1). On October 10, 2013, the Court dismissed in part and denied in part Mr. Gray's petition. *Id*. at ECF No. 23. None of the claims that Mr. Gray raised in his prior petition is at issue in this proceeding.

On January 21, 2014, Mr. Gray, through new counsel, filed a supplemental affidavit from his brother, Rufus Gray, in support of his petition. (ECF No. 9-1, Exhibit 16). In his supplemental affidavit, Rufus stated that he had been tried and acquitted for the murders. Rufus also stated that he informed Mr. Gray's counsel that Mr. Gray was not present at the time of the shooting, and that he was willing and able to testify to that fact at trial. Rufus also stated that he received a subpoena to appear at trial but was told that "he could not enter the courtroom because he was under subpoena." (ECF No. 9-1, Exhibit 16.)

On February 6, 2014, the trial court construed Mr. Gray's supplemental affidavit as a motion for leave to file the affidavit and denied the motion, holding that it was untimely and barred by res judicata. (ECF No. 9-1, Exhibit 18). The trial court did not rule on Mr. Gray's underlying petition for post-conviction relief at that time. Mr. Gray did not appeal from the trial court's order.

On November 18, 2021, the trial court denied Mr. Gray's petition for post-conviction relief, holding that his claims were barred by res judicata and without merit. (ECF No. 9-1, Exhibit 47). On November 19, 2021, Mr. Gray, through counsel, filed a motion for leave to file a supplement to his post-conviction petition, arguing that he was actually innocent of the murders and that he received the ineffective assistance of trial counsel. (ECF No. 9-1, Exhibit 48). On November 29, 2021, Mr. Gray also filed a motion for reconsideration of the trial court's November 18, 2021, order. (ECF No. 9-1, Exhibit 50). On December 2, 2021, the trial court denied both motions. (ECF No. 9-1, Exhibits 53-54).

On December 10, 2021, Mr. Gray, through counsel, filed a notice of appeal to the Eighth Appellate District from the trial court's denial of his post-conviction petition. (ECF No. 9-1, Exhibit 55). In his appellate brief, Mr. Gray raised the following assignments of

error:

1. The trial court abused its discretion when it denied Gray's petition for postconviction relief in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

2. The trial court erred in denying Gray's petition for postconviction relief where he presented sufficient evidence dehors the record to merit an evidentiary hearing.

(ECF No. 9-1, Exhibit 56).

On June 9, 2022, the Eighth Appellate District affirmed, holding that Mr. Gray's claims were barred by the doctrine of res judicata and that he did not present any evidence outside the record relevant to his petition. (ECF No. 9-1, Exhibit 58). On July 11, 2022, Mr. Gray, acting *pro se*, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 9-1, Exhibit 60). In his memorandum in support of jurisdiction, Mr. Gray raised the following propositions of law:

1. The trial court abused its discretion when it denied Gray's petition for postconviction relief in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

2. The trial court erred in denying Gray's petition for postconviction relief where he presented sufficient evidence dehors the record to merit an evidentiary hearing.

(ECF No. 9-1, Exhibit 61). On September 27, 2022, the Ohio Supreme Court declined to accept jurisdiction over the appeal. (ECF No. 9-1, Exhibit 62).

**D. <u>Motion for New Trial</u>**

On December 28, 2017, Mr. Gray, through new counsel, filed a motion for leave to file a delayed motion for a new trial pursuant to Ohio Crim.R. 33(A)(6) and 33(B). (ECF No. 9-1, Exhibit 19). Mr. Gray argued that he was entitled to a new trial because a new witness, Curtis Davis, provided an affidavit stating that Mr. Davis participated in the altercation that led to the murders, that Mr. Gray was fighting with Mr. Davis at the time of the shooting, and

thus that Mr. Gray could not have been the shooter. Mr. Davis said that he had not come forward sooner because he was afraid to testify given the vicious reputation of one of the other men involved in the incident. Mr. Gray asserted that he was unavoidably prevented from discovering the identify of Mr. Davis until Mr. Davis approached Mr. Gray at Lake Erie Correctional Institution eight years after Mr. Gray began serving his sentence.

In addition to Mr. Davis' affidavit, Mr. Gray also submitted an affidavit from Rufus, who now said that he was fighting with the two victims, one of whom pulled out a pistol and hit Rufus with it. Rufus said that the pistol fell to the ground and that he began fighting the victims over it, at which point the pistol went off multiple times, killing both victims. Rufus averred that Mr. Gray did not have a firearm on him during the incident, did not shoot anyone, and was not near the gun at the time of the shootings. Mr. Gray also submitted an affidavit from himself stating that he was not the shooter.

On June 5, 2018, the trial court denied Mr. Gray's motion for leave to file a delayed motion for a new trial. (ECF No. 9-1, Exhibit 21). On June 29, 2018, Mr. Gray, through new counsel, timely filed an appeal to the Eighth Appellate District. (ECF No. 9-1, Exhibit 22). In his appellate brief, Mr. Gray raised the following assignment of error:

1. The trial court abused its discretion in denying Defendant's motion for leave to file a motion for a new trial on the basis of newly-discovered evidence.

 (ECF No. 9-1, Exhibit 23).

On May 2, 2019, the Eighth Appellate District affirmed, holding that Mr. Gray had not established by clear and convincing evidence that he was unavoidably prevented from timely discovering the purported new evidence and that he did not file his motion within a reasonable time after learning of Mr. Davis' identity. (ECF No. 9-1, Exhibit 26). The court also held that the affidavits of Rufus and Mr. Gray were self-serving and deficient. Finally,

the court concluded that the information in the affidavits was not plausible in light of the forensic evidence establishing that Mr. Gray touched the roof of the victim's car, something that would have been impossible if the version of events depicted in the affidavits were accurate.

Mr. Gray filed a motion for reconsideration, which the Eighth Appellate District denied on May 31, 2019. (ECF No. 9-1, Exhibits 27, 29). On June 10, 2019, Mr. Gray, acting *pro se*, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 9-1, Exhibit 30). In his memorandum in support of jurisdiction, Mr. Gray raised the following proposition of law:

> 1. The trial court abused its discretion and violated Appellant's due process rights, when it denied Appellant's motion for leave to a [*sic*] motion for new trial on the basis of newly-discovered evidence.

(ECF No. 9-1, Exhibit 31). On July 23, 2019, the Ohio Supreme Court declined to accept jurisdiction over the appeal. (ECF No. 9-1, Exhibit 33).

### E.  Second Motion for New Trial

On April 20, 2020, Mr. Gray, through new counsel, filed a second motion for leave to file a motion for a new trial. (ECF No. 9-1, Exhibit 34). Mr. Gray supported the motion with Mr. Davis' affidavit, along with an affidavit from a family friend stating that Rufus had recently confessed to the shootings, as well as an affidavit from Rufus stating that he intentionally killed the victims after one of them struck him in the face with a gun.

On January 12, 2021, the trial court denied Mr. Gray's motion, holding that the proffered evidence was not newly discovered, that Mr. Gray was not unavoidably prevented from discovering it, and that his claims were barred by res judicata. (ECF No. 9-1, Exhibit 36). On February 9, 2021, Mr. Gray, through new counsel, timely appealed to the Eighth Appellate District. (ECF No. 9-1, Exhibit 37). In his appellate brief, Mr. Gray raised the following assignments of error:

1. The trial court abused its discretion and violated Appellant's due process rights, when it denied Appellant's motion for leave, finding Appellant failed to show by clear and convincing evidence he was unavoidably prevented from discovering the evidence that appellant introduced in his motion for new trial, when the evidence on it's [*sic*] face demonstrated such unavoidableness.

2. The trial court abused its discretion when it denied Appellant's motion for leave to file a motion for new trial without conducting an evidentiary hearing, as Appellant submitted documentation that on it's [*sic*] face supported Appellant's claim that he was unavoidably prevented from discovering said evidence earlier.

3. The trial court abused its discretion when it ruled Appellant's 4/20/2020 motion for leave to file a motion for new trial was barred by the doctrine of res judicata.

(ECF No. 9-1, Exhibit 38).

On October 14, 2021, the Eighth Appellate District affirmed, holding that Mr. Gray's arguments were barred by res judicata because he raised them in his prior appeal. (ECF No. 9-1, Exhibit 41). The court also held that Mr. Gray was not unavoidably prevented from discovering the alleged new evidence. Mr. Gray filed a motion for reconsideration, arguing that res judicata should not apply because he was actually innocent. (ECF No. 9-1, Exhibit 42). On July 1, 2022, the court denied Mr. Gray's motion for reconsideration. (ECF No. 9-1, Exhibit 43).

On November 22, 2021, Mr. Gray filed a notice of appeal to the Ohio Supreme Court. (ECF No. 9-1, Exhibit 44). In his memorandum in support of jurisdiction, Mr. Gray raised the following propositions of law:

1. The trial court abused its discretion and violated Appellant's due process rights, when it denied Appellant's motion for leave, finding Appellant failed to show by clear and convincing evidence he was unavoidably prevented from discovering the evidence that Appellant introduced in his motion for new trial, when the evidence on its face demonstrated such unavoidableness.

2. The trial court abused its discretion, when it denied Appellant's motion for leave to file motion for new trial without conducting an evidentiary hearing as Appellant submitted documentation that on its face supported Appellant's claim that he was unavoidably prevented from discovering said evidence earlier.

11

3. The trial court abused its discretion when it ruled Appellant's 4/20/2020 motion for leave to file a motion for new trial was barred by the doctrine of res judicata.

(ECF No. 9-1, Exhibit 45). On February 15, 2022, the Ohio Supreme Court declined

to accept jurisdiction over the appeal. (ECF No. 9-1, Exhibit 46).

F.  **Federal Habeas Action**

On January 30, 2023, Mr. Gray, acting *pro se*, filed his 28 U.S.C. § 2254 habeas

petition. (ECF No. 1). Mr. Gray's habeas petition raises four grounds for relief:[4]

1. Petitioner's due process rights were violated, when the trial court denied petitioner's motion for new trial considering the evidence attached hereto.

2. Trial Court abused its discretion and violated Petitioner's due process when it denied Petitioner's Motion for Leave to File Motion for New Trial without conducting an evidentiary hearing in light of evid.

3. Trial Court abused its discretion when it ruled Petitioner's 4/20/2020 Motion for Leave to file a Motion for New Trial was barred by the doctrine of res judicata.

4. The trial court abused its discretion when it denied Petitioner's Petition for Postconviction Relief in violation of the Fifth, Sixth, and Forteenth Amendments to the United States Constitution.

*Id*. The Warden filed an answer/return of writ on July 10, 2023. (ECF No. 9). Mr.

Gray filed a traverse on August 16, 2023. (ECF No. 10).

IV. STANDARDS OF REVIEW AND GOVERNING LAW

A.  **Jurisdiction**

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of

habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court

only on the ground that he is in custody in violation of the Constitution or laws or treaties of

the United States." A state prisoner may file a § 2254 petition in the "district court for the

district wherein such person is in custody or in the district court for the district within which

---

[4] Mr. Gray's grounds for relief are presented verbatim.

the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Cuyahoga County Court of Common Pleas sentenced Mr. Gray, and the Court takes judicial notice that Cuyahoga County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Gray's § 2254 petition.

**B.  Exhaustion and Procedural Default**

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a

procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

The Sixth Circuit has developed a four-part test to determine whether a procedural default precludes a federal court from reaching a petitioner's claim: (1) whether there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with; (2) whether the state court "actually enforced" the state procedural rule; (3) whether the rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the procedural rule and actual prejudice from the alleged constitutional error. *Barton v. Warden, Southern Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). These factors are commonly known as the "*Maupin*" factors.

As the fourth *Maupin* factor indicates, if a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren*

14

*v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C.  Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D.  AEDPA Standard of Review

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than

16

incorrect or erroneous—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any

17

possibility for fairminded disagreement." *Id.*

## V. ANALYSIS

Mr. Gray asserts four grounds for relief. The Warden argues that Mr. Gray procedurally defaulted on all of his claims because he failed to fairly present them to the Ohio courts. The Warden also argues that none of Mr. Gray's claims is cognizable in a federal habeas proceeding. I will address each of the Warden's arguments in turn.

### A. <u>Procedural Default</u>

The Warden first argues that Mr. Gray procedurally defaulted on each of his claims because he did not present them to the Ohio courts as federal constitutional claims at every step of the state court review process. The Warden's argument is not well-taken.

"[F]ederal courts ordinarily may not 'consider a claim in a *habeas* petition that was not "fairly presented" to the state courts' absent cause and prejudice to excuse the procedural default." *Nian v. Warden, N. Cent. Corr. Inst.*, 994 F.3d 746, 751 (6th Cir. 2021) (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). "[I]t does not suffice to only present the claim to a state trial court; rather, the petitioner must raise the claim in state court and 'pursue [it] through the state's ordinary appellate review procedures." *Id.* at 751-52 (quoting *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009)).

"To determine whether a petitioner has fairly presented a claim in state court, [a court] ask[s] whether the petitioner: (1) relied upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law." *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017) (citing *McMeans*, 228 F.3d at 681). "While a petitioner need not cite 'chapter and verse' of constitutional law, 'general allegations of the

denial of rights to a "fair trial" and "due process" do not "fairly present claims" that specific constitutional rights were violated.'" *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (quoting *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)).

Mr. Gray raised his first three grounds for relief in connection with his appeals from the trial court's denial of his two motions for a new trial under Ohio Criminal Rule 33. (ECF No. 9-1, Exhibits 23, 31, 38, 45). The Warden argues, however, that Mr. Gray did not fairly present those claims because he argued them "purely as state-law matters" and because "[n]o federal constitutional law was cited, and no constitutional arguments were made." (ECF No. 9, PageID # 82). While that is an accurate characterization of Mr. Gray's appellate briefs with respect to his first new trial motion, it is not accurate with respect to the second. Rather, in his reply brief to the Eighth Appellate District during his appeal of the second new trial motion, Mr. Gray cited *Schlup*, *Sawyer v. Whitley*, 505 U.S. 333 (1992), and *House v. Bell*, 547 U.S. 518 (2006), for the proposition that a court should excuse procedural defaults and address the merits of a prisoner's claim where the prisoner makes a convincing show of actual innocence. (ECF No. 9-1, Exhibit 40). He also argued that due process of law mandated that be granted a new trial in light of the evidence he presented which, he claimed, showed that he was actually innocent. *Id*.

While Mr. Gray raised those arguments for the first time in a reply, the Sixth Circuit has held that a petitioner may fairly present a claim through an appellate reply brief. *See Rudolph v. Parke*, 856 F.2d 738, 739-40 (6th Cir. 1988) (holding that petitioner fairly presented constitutional claim when petitioner raised it in reply brief before Kentucky Supreme Court); *Washington v. Morgan*, No. 5:12 CV 00084, 2014 WL 5465845, at *11 (N.D. Ohio Oct. 28, 2014) ("it is true that an issue may be fairly presented to the state courts

if it is first raised in a reply brief") (report and recommendation).

Mr. Gray also repeated the same arguments in his memorandum in support of jurisdiction to the Ohio Supreme Court, including citations to *Schlup*, *Whitley*, and *House*. (ECF No. 9-1, Exhibit 45). Applying the four-factor test from *Hauk*, Mr. Gray relied on federal cases employing a federal constitutional analysis, phrased his claims in terms of constitutional law, and alleged that his federal due process rights were violated because the trial court should have excused any technical defects in his motions in light of his actual innocence. I thus determine that Mr. Gray fairly presented his first three grounds for relief as federal constitutional claims at all levels of the state court review process.

The same is true of Mr. Gray's fourth ground for relief, which asserts that the trial court violated his due process rights when it denied his post-conviction petition for relief. In his briefs to both the Eighth Appellate District and the Ohio Supreme Court, Mr. Gray cited *Schlup*, *Whitley*, and *House* for the proposition that the trial court violated his due process rights by denying his petition without a hearing and on the basis of res judicata notwithstanding evidence that he asserts establishes he is actually innocent of the murders. (ECF No. 9-1, Exhibits 56, 61). Mr. Gray also referenced the Fifth, Sixth, and Fourteenth Amendments in his assignments of error. *Id*.

The Warden acknowledges that Mr. Gray cited to federal law and federal constitutional principles in connection with his post-conviction petition, but argues that "[a]ny federal caselaw cited related to [Mr. Gray's] protestations of his actual innocence, rather than his proposition of law that the lower courts erred in denying his post-conviction petition as res judicata without a hearing." (ECF No. 9, PageID # 82). I do not believe that those two issues can be separated in the manner that the Warden suggests. Rather, Mr. Gray's

argument was that the lower courts erred in denying his post-conviction petition, in part, *because* he alleges that he is actually innocent of the crimes for which he was convicted and because the United States Supreme Court has held that actual innocence can justify the consideration of otherwise defaulted claims. I therefore recommend that the Court hold that Mr. Gray fairly presented his fourth ground for relief as well.

It appears likely, however, that Mr. Gray procedurally defaulted on all four grounds for relief in other ways. In particular, the Eighth Appellate District applied the doctrine of res judicata in affirming the trial court's denial of his motions for a new trial and his post-conviction petition, and "Ohio's application of its res judicata rule is usually an adequate and independent state ground that triggers a finding of procedural default." *Jones v. Bradshaw*, 46 F.4th 459, 485 (6th Cir. 2022). However, procedural default is an affirmative defense, and a respondent waives the defense if the respondent does not assert it. *See Trest v. Cain*, 522 U.S. 87, 89 (1997); *McNeill v. Bagley*, 10 F.4th 588, 595-96 (6th Cir. 2021) (holding that warden waived procedural default defense by failing to raise issue before the district court). The Warden has not argued that the Eighth Appellate District's application of res judicata resulted in a procedural default, and instead argues only that Mr. Gray failed to fairly present his claims.

It is true that a federal court is "not precluded from raising or recognizing a procedural default despite the fact that it was not raised by the State." *Brinkley v. Houk*, No. 4:06 CV 0110, 2012 WL 1537661, at *9 (N.D. Ohio Apr. 30, 2012) (citing *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005)). However, "[t]he main concern with raising procedural default *sua sponte* is that a petitioner not be disadvantaged without having an opportunity to respond." *Howard*, 405 F.3d at 476. Here, Mr. Gray has not had an opportunity to address

any res judicata-based procedural default arguments. I therefore conclude that raising the issue *sua sponte* would unfairly disadvantage Mr. Gray. And, because I conclude that his claims can be disposed of on cognizability grounds (as discussed below), I recommend that the Court decline to raise the res judicata procedural default issue on its own initiative.

### B. Cognizability

In addition to her procedural default argument, the Warden argues that Mr. Gray's petition should be dismissed in its entirety because none of his grounds for relief is cognizable in a habeas proceeding. I agree.

As an initial matter, while Mr. Gray repeatedly asserts that he is innocent of the murders, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) ("In the wake of *Schlup*, we have repeatedly indicated that [free-standing actual innocence] claims are not cognizable on habeas"); *Gregory v. Sheldon*, No. 5:17CV626, 2019 WL 3754735, at *12 (N.D. Ohio May 3, 2019) ("Since the Supreme Court has not yet recognized a freestanding actual innocence claim, the Sixth Circuit has repeatedly ruled that such claims are not cognizable on federal habeas review, especially in non-capital cases.") (citing cases), *report and recommendation adopted*, 2019 WL 3753335 (N.D. Ohio Aug. 8, 2019). Mr. Gray's argument that he is actually innocent thus does not constitute an independent basis for habeas belief, and I will instead analyze the four specific claims that he has asserted to determine whether any of them is cognizable.

In his first ground for relief, Mr. Gray alleges that the trial court violated his due process rights when it denied his motions for a new trial. Where a petitioner alleges that the

state courts improperly denied his or her motion for a new trial, a federal habeas court can review the denial "only for constitutional error." *Pudelski v. Wilson*, 576 F.3d 595, 611 (6th Cir. 2009). "To establish a constitutional due process claim, [a petitioner] must demonstrate that the trial court's denial of his motion for new trial was 'so egregious' that it violated his right to a fundamentally fair trial." *Id*. (citing *Fleming v. Metrish*, 556 F.3d 520, 535 (6th Cir. 2009); *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004)).

Here, while Mr. Gray asserts generally that the trial court's ruling violated his due process rights, the thrust of his argument (other than that he is actually innocent) is that the trial court erred in applying the state procedural rule governing motions for a new trial, Ohio Crim.R. 33. In particular, he argues that the trial court abused its discretion because he demonstrated by clear and convincing evidence under Crim.R. 33 that he was unavoidably prevented from discovering the evidence supporting his motions within 120 days of his conviction. (ECF No. 1-1, PageID # 25-28).

Mr. Gray's argument that the Ohio courts misapplied Ohio Crim.R. 33 is not cognizable in a federal habeas proceeding. *See Woodson v. Ohio*, No. 1:19 CV 0339, 2022 WL 854329, at *2 (N.D. Ohio Mar. 22, 2022) ("a claim that an Ohio court misapplied Ohio law when deciding a motion for a new trial is not cognizable on habeas review"); *Mock v. Bracy*, No. 4:22-cv-00937, 2024 WL 2347279, at *21 (N.D. Ohio May 22, 2024) (petitioner's argument that state courts misapplied Ohio law in denying motion for leave to file motion for new trial was not cognizable). Nor has Mr. Gray shown that the state courts' actions in denying his motions were "so egregious" as to violate his right to a fundamentally fair trial. *Pudelski*, 576 F.3d at 611. Finally, Mr. Gray has not cited any cases holding that a state court's failure to apply *Schlup* and its progeny when adjudicating a motion for a new trial creates a

cognizable habeas claim. I thus recommend that the Court dismiss Mr. Gray's first ground for relief as non-cognizable.

Mr. Gray's second ground for relief, which asserts that the trial court violated his due process rights by failing to hold an evidentiary hearing on his motions for leave to file a motion for a new trial, is similarly not cognizable. "There is no free-standing federal constitutional right to a new trial nor to any particular procedure for deciding motions for new trial." *Young v. Wainwright*, No. 3:18CV2933, 2019 WL 13400363, at *2 (N.D. Ohio June 13, 2019). Thus, courts have rejected a petitioner's argument that the Ohio courts should have held a hearing on the petitioner's motion for a new trial, holding that such a claim is not cognizable. *See Walker v. Schweitzer*, No. 5:17cv2361, 2020 WL 981431 at *14-15 (N.D. Ohio Feb. 7, 2020) (petitioner's argument that trial court violated his Fifth, Sixth, and Fourteenth Amendment rights by failing to hold hearing on motion for new trial was not cognizable), *report and recommendation adopted*, 2020 WL 977965 (N.D. Ohio Feb. 28, 2020); *Ball v. Houk*, No. 1:05 CV 2120, 2007 WL 4556676, at *13 (N.D. Ohio Dec. 20, 2007) (holding that question of whether to hold hearing on motion for new trial was within trial court's discretion and not cognizable in federal habeas proceeding) (report and recommendation). I recommend that the Court dismiss Mr. Gray's second ground for relief as non-cognizable as well.

In his third ground for relief, Mr. Gray argues that the trial court erred in holding that his second motion for leave to file a motion for a new trial was barred by the doctrine of res judicata. Courts have repeatedly held that a state court's application of Ohio's res judicata rules is not cognizable. *See Knoefel v. Phillips*, No. 1:20-cv-1529, 2021 WL 8894449, at *30 (N.D. Ohio Apr. 23, 2021) (petitioner's "argument that the Ohio court improperly applied

Ohio's *res judicata* rule is a non-cognizable state law claim, not a federal habeas claim"), *report and recommendation adopted*, 2022 WL 2193442 (N.D. Ohio June 17, 2022); *Lacy v. Fender*, No. 1:21-cv-948, 2023 WL 11926125, at *16 (N.D. Ohio June 1, 2023) (claim that court erred in applying res judicata to post-conviction petition was not cognizable), *report and recommendation adopted*, 2023 WL 4825638 (N.D. Ohio July 27, 2023). I thus recommend that the Court also dismiss Mr. Gray's third ground for relief because it is not cognizable.

Finally, Mr. Gray asserts in his fourth ground for relief that the trial court violated his due process rights when it denied his motion for post-conviction relief notwithstanding the evidence he presented which, he claims, shows he is actually innocent of the murders. This is an actual innocence claim which, as noted above, is not cognizable in a habeas proceeding. *See Herrera*, 506 U.S. at 400; *see Cress*, 484 F.3d at 854.[5] Mr. Gray's argument that the trial court erred in failing to hold a hearing on his motion likewise does not state a cognizable claim for the reasons discussed in connection with his second ground for relief. *See Walker*, 2020 WL 981431 at *14-15. I therefore recommend that the Court dismiss fourth ground for relief as non-cognizable as well.

[5] Citing *Strickland v. Washington*, 466 U.S. 668 (1984), Mr. Gray also suggests in his memorandum in support of his petition that his trial counsel was ineffective in failing to locate and present at trial evidence regarding Mr. Gray's purported innocence. Mr. Gray has not asserted a standalone ineffective assistance of counsel claim in this proceeding, and instead references *Strickland* only within his fourth ground for relief. I thus do not construe Mr. Gray as asserting a separate claim for ineffective assistance of trial counsel. Even if I were to construe Mr. Gray as asserting that the trial court erred in denying his post-conviction petition because he received the ineffective assistance of appellate counsel, however, he did not raise an ineffective assistance of counsel argument with his respect to his post-conviction petition until *after* the trial court had already denied the petition. (ECF No. 9-1, Exhibits 47-49). Mr. Gray fails to explain how the trial court violated his due process rights by failing to consider an ineffective assistance of counsel argument that he did not raise before the court ruled against him.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. __Legal Standard__

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time

of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B. <u>Analysis</u>

Mr. Gray has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS Mr. Gray's petition for a writ of habeas corpus under 28 U.S.C. § 2254 because his claims are not cognizable.  I also recommend that the Court not grant him a certificate of appealability.

Dated:  January 28, 2025

*s/Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

### NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may

consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).