**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **RAMON GRAY,** | ) | **CASE NO.  1:23 CV 222** |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **DOUGLAS FENDER, WARDEN,** | ) | **Magistrate Judge** |
| | ) | **Jennifer Dowdell Armstrong** |
| | ) | |
| **Respondent.** | ) | **MEMORANDUM OPINION** |

This matter is before the Court on the Report and Recommendation issued by Magistrate Judge Jennifer Dowdell Armstrong.  (Docket #11.)  On February 6, 2023, Petitioner, Ramon Gray, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Docket #1.) The Magistrate Judge recommends that the Petition be dismissed and that the Court decline to grant Mr. Gray a certificate of appealability.

Mr. Gray is currently incarcerated at the Lake Erie Correctional Institution.  Misty Mackey is the acting Warden of the Lake Erie Correctional Institution.  Therefore, as recommended by the Magistrate Judge, the Court substitutes Warden Misty Mackey for Warden Douglas Fender as the Respondent in this proceeding.

### Factual and Procedural Background

As set forth by the Magistrate Judge, the factual and procedural history of this case is as follows:

> For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); Moore v. Mitchell, 708 F.3d 760, 775 (6th Cir. 2013); Mitzel v. Tate, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. Mitzel, 267 F.3d at 530. The Ohio Court of Appeals for the Eighth District summarized the facts as follows:

>> {¶ 2} At approximately 2:30 a.m. on January 11, 2007, as Eddie Parker walked up to the B–5 Lounge and Deli in Cleveland, Ohio, he saw his younger brother, Andre Parker, and his brother's friend, Willie DeLoach, scuffling with two men in the parking lot. Eddie described the man fighting with his brother as wearing a black leather jacket and black baseball cap (later identified as Ramon) and the man fighting with DeLoach as wearing a white tee-shirt and a white skull cap with a small brim on it (later identified as Ramon's brother, Rufus Gray).

>> {¶ 3} Eddie saw the man fighting with his brother pull a weapon and then saw Andre run to his car. Eddie ran inside the B–5 Lounge and screamed for the owner to call 9–1–1 and then, as he watched through the windows, saw Ramon open the rear passenger door of his brother's car, and, with one hand on top of the car, aim the gun into the car and fire two shots into the vehicle. Moments later, Eddie saw what he described as a late-model, gray Oldsmobile exit the parking lot. As the car drove by, he saw two men in the vehicle and made eye contact with Rufus, the passenger in the car. He also got a partial license plate number of 4448.

>> {¶ 4} Eddie then went out to the parking lot, where he found his brother slumped back in the driver's seat of his car and DeLoach lying wounded in the parking lot. Both men died almost immediately; according to the coroner, Andre Parker died from a single gunshot wound to the right side of the chest and DeLoach died from a single wound to the left abdomen. The coroner also determined that both men had been shot with the same weapon.

-2-

{¶ 5} Rufus Gray was treated in the early morning hours of January 11, 2007, at the South Pointe Hospital Emergency Room for a laceration above his right eye. Ramon and Rufus's mother, Yolanda Gray, testified that she met Ramon and Rufus at the Emergency Room and saw them leave the hospital together in Ramon's car, which she identified as a late-model Oldsmobile.

{¶ 6} Later that day, police officer Michael Lawrence received a broadcast that described a possible suspect vehicle with the partial license plate number of 4448. Office Lawrence searched the BMV computer database with different lettered prefixes attached to the numbers 4448 and eventually determined that a gray, 1990 Oldsmobile with the license plate number EBG 4448 was registered to Ramon Gray.

{¶ 7} The Cuyahoga County Coroner's Officer subsequently identified DNA obtained from a white skull cap found at the scene as matching Rufus Gray's DNA profile. His DNA was also found on both victims. The police arrested him in September 2007, and shortly thereafter, Eddie identified Rufus from a photo array as the passenger he had seen in the gray Oldsmobile driving away from the B–5 immediately after the shooting.

{¶ 8} The police arrested Ramon in February 2008. After his arrest, Eddie identified Ramon in a physical line-up at police headquarters as the man who shot his brother. Subsequently, the police determined that three fingerprints lifted from above the rear passenger side door of the car Andre Parker was found in matched Ramon's prints.

(ECF No. 9-1, Exhibit 10); State v. Gray, No. 92303, 2010 WL 320481, 2010-Ohio-240 (8th Dist. Jan. 28, 2010).

III.     PROCEDURAL HISTORY

A.     State Court Conviction

On March 5, 2008, Mr. Gray was indicted in the Cuyahoga County Court of Common Pleas on: (1) two counts of aggravated murder with mass murder and firearm specifications in violation of O.R.C. §§ 2903.01(A) and 2941.145; and (2) one count of having weapons while under disability in violation of O.R.C. § 2923.13(A)(3). (ECF No. 9-1, Exhibit 1). On March 7, 2008, Mr. Gray pled not guilty to all charges. (ECF No. 9-1, Exhibit 2).

The case proceeded to trial. On September 26, 2008, the jury convicted Mr. Gray on all counts and determined that he should be sentenced to life without the possibility of parole on the aggravated murder charges. (ECF No. 9-1, Exhibit

3). The court imposed a sentence of life without parole on both aggravated murder counts and also sentenced Mr. Gray to five years on the having weapons while under disability count, for an aggregate sentence of life without the possibility of parole. Id.

      B.     Direct Appeal

     On October 23, 2008, Mr. Gray, through counsel, timely filed a notice of appeal to the Eighth Appellate District. (ECF No. 9-1, Exhibit 4). In his appellate brief, Mr. Gray raised the following assignments of error:

> 1. The Appellant was denied due process and equal protection of law pursuant to the constitutions of the State of Ohio and the United States when his case was improperly assigned to a visiting judge.
>
> 2. Inaccurate penalty phase instructions that misguide the jury as to their duties under the law regarding consideration of sentencing options violate the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States.
>
> 3. The verdict and judgment below are against the manifest weight of the evidence.
>
> 4. The lower court erred and denied the appellant a fair trial when it allowed the jury to consider a non-existent "mass murder" specification.
>
> 5. The judgment and sentence finding Appellant guilty of the "mass murder" specification pursuant to R.C. 2929.04(A)(5) must be vacated as the jury never found that the two killings were part of a course of conduct.
>
> 6. The lower court erred and denied Appellant due process of law and a fair trial when it permitted display of heightened security measures in front of the jury when Appellant gave his unsworn statement.
>
> 7. Appellant was denied his Fifth Amendment right to due process of law by virtue of the denial of his request for appointment of an expert witness on eyewitness identification.
>
> 8. The lower court erred and denied Appellant a fair trial when it permitted the State to introduce prejudicial 'other acts' evidence during the sentencing phase.
>
> 9. Appellant was denied effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

(ECF No. 9-1, Exhibit 5).

On October 2, 2009, the Eighth Appellate District, acting sua sponte, remanded the appeal to the trial court because the sentencing entry failed to contain the means of conviction for each count and specification. (ECF No. 9-1, Exhibit 8). On October 23, 2009, the trial court entered a corrected sentencing entry, again sentencing Mr. Gray to life in prison without the possibility of parole. (ECF No. 9-1, Exhibit 9).

On January 28, 2010, the Eighth Appellate District affirmed Mr. Gray's conviction and sentence. (ECF No. 9-1, Exhibit 10). On February 26, 2010, Mr. Gray, acting pro se, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 9-1, Exhibit 11). In his memorandum in support of jurisdiction, Mr. Gray raised the following propositions of law:

1.   The Eighth District of Appeals erred by not remanding Appellant's case for failure of the Trial Court to issue proper Journal Entry authorizing the Assignment of the Visiting Judge to preside over his trial.

2.   The Eighth District of Appeals erred by not remanding Appellant's case for failure of the Trial Court to issue proper penalty phase instructions that misguided the jury as to their duties under the law regarding consideration of sentencing options which violated Appellant's Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

3.   The jury verdicts in Appellant's case were against the Manifest Weight of Evidence.

4.   Appellant was deprived his Constitutional Rights to a Fair Trial and Due Process of Law when the Trial Court allowed the jury to consider a non-existent "mass murder" specification.

5.   Appellant was denied Due Process of Law and a Fair Trial against his Constitutional Rights under the Ohio and United States Constitution when the Trial Court allowed a judgment and sentence of a "mass murder" specification pursuant to Ohio Revised Code 2929.04(A)(5) where the jury never found that the two killings were part of a course of conduct.

6.   Appellant was denied Due Process of Law and a Fair Trial when the Trial Court erred in permitting a display of heightened security measures in front of the jury when Appellant gave his unsworn statement.

-5-

7.     Appellant was denied his Fifth Amendment Right to Due Process of Law by virtue of the denial of his Request for Appointment of an Expert Witness on Eyewitness Identification.

8.     Appellant was denied a Fair Trial when the Trial Court erred by permitting the State to introduce prejudicial 'Other Acts' Evidences during the sentencing phase of his trial.

9.     Appellant claims he suffered from Ineffective Assistance of Counsel against his Sixth and Fourteenth Amendment Rights to the United States Constitution when Trial Counsel's performance fell below any reasonable standard and he was substantially prejudiced thereby said deficient performance.

(ECF No. 9-1, Exhibit 12). On May 26, 2010, the Ohio Supreme Court denied Mr. Gray leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (ECF No. 9-1, Exhibit 13).

    C.     Petition for Post-Conviction Relief

On July 29, 2010, Mr. Gray, through new counsel, filed a motion for post-conviction relief pursuant to O.R.C. § 2953.21, asserting that: (1) the trial court lacked jurisdiction over the case because the case was assigned to a visiting judge; (2) Mr. Gray's rights were violated when the trial court denied his motion to appoint an expert on witness identification; and (3) Mr. Gray was denied his right to a fair trial because the court, the prosecution, and the defense referred to the specifications attached to the aggravated murder charges as "mass murder" specifications rather than "course of conduct" specifications. (ECF No. 9-1, Exhibit 14).

On January 21, 2014, Mr. Gray, through new counsel, filed a supplemental affidavit from his brother, Rufus Gray, in support of his petition. (ECF No. 9-1, Exhibit 16). In his supplemental affidavit, Rufus stated that he had been tried and acquitted for the murders. Rufus also stated that he informed Mr. Gray's counsel that Mr. Gray was not present at the time of the shooting, and that he was willing and able to testify to that fact at trial. Rufus also stated that he received a subpoena to appear at trial but was told that "he could not enter the courtroom because he was under subpoena." (ECF No. 9-1, Exhibit 16.)

On February 6, 2014, the trial court construed Mr. Gray's supplemental affidavit as a motion for leave to file the affidavit and denied the motion, holding that it was untimely and barred by res judicata. (ECF No. 9-1, Exhibit 18). The trial court did not rule on Mr. Gray's underlying petition for post-conviction relief at that time. Mr. Gray did not appeal from the trial court's order.

-6-

On November 18, 2021, the trial court denied Mr. Gray's petition for post-conviction relief, holding that his claims were barred by res judicata and without merit. (ECF No. 9-1, Exhibit 47). On November 19, 2021, Mr. Gray, through counsel, filed a motion for leave to file a supplement to his post-conviction petition, arguing that he was actually innocent of the murders and that he received the ineffective assistance of trial counsel. (ECF No. 9-1, Exhibit 48). On November 29, 2021, Mr. Gray also filed a motion for reconsideration of the trial court's November 18, 2021, order. (ECF No. 9-1, Exhibit 50). On December 2, 2021, the trial court denied both motions. (ECF No. 9-1, Exhibits 53-54).

On December 10, 2021, Mr. Gray, through counsel, filed a notice of appeal to the Eighth Appellate District from the trial court's denial of his post-conviction petition. (ECF No. 9-1, Exhibit 55). In his appellate brief, Mr. Gray raised the following assignments of error:

    1.    The trial court abused its discretion when it denied Gray's petition for postconviction relief in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

    2.    The trial court erred in denying Gray's petition for postconviction relief where he presented sufficient evidence dehors the record to merit an evidentiary hearing.

(ECF No. 9-1, Exhibit 56).

On June 9, 2022, the Eighth Appellate District affirmed, holding that Mr. Gray's claims were barred by the doctrine of res judicata and that he did not present any evidence outside the record relevant to his petition. (ECF No. 9-1, Exhibit 58). On July 11, 2022, Mr. Gray, acting pro se, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 9-1, Exhibit 60). In his memorandum in support of jurisdiction, Mr. Gray raised the following propositions of law:

    1.    The trial court abused its discretion when it denied Gray's petition for postconviction relief in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

    2.    The trial court erred in denying Gray's petition for postconviction relief where he presented sufficient evidence dehors the record to merit an evidentiary hearing.

(ECF No. 9-1, Exhibit 61). On September 27, 2022, the Ohio Supreme Court declined to accept jurisdiction over the appeal. (ECF No. 9-1, Exhibit 62).

D.    Motion for New Trial

On December 28, 2017, Mr. Gray, through new counsel, filed a motion for leave to file a delayed motion for a new trial pursuant to Ohio Crim.R. 33(A)(6) and 33(B). (ECF No. 9-1, Exhibit 19). Mr. Gray argued that he was entitled to a new trial because a new witness, Curtis Davis, provided an affidavit stating that Mr. Davis participated in the altercation that led to the murders, that Mr. Gray was fighting with Mr. Davis at the time of the shooting, and thus that Mr. Gray could not have been the shooter. Mr. Davis said that he had not come forward sooner because he was afraid to testify given the vicious reputation of one of the other men involved in the incident. Mr. Gray asserted that he was unavoidably prevented from discovering the identify of Mr. Davis until Mr. Davis approached Mr. Gray at Lake Erie Correctional Institution eight years after Mr. Gray began serving his sentence.

In addition to Mr. Davis' affidavit, Mr. Gray also submitted an affidavit from Rufus, who now said that he was fighting with the two victims, one of whom pulled out a pistol and hit Rufus with it. Rufus said that the pistol fell to the ground and that he began fighting the victims over it, at which point the pistol went off multiple times, killing both victims. Rufus averred that Mr. Gray did not have a firearm on him during the incident, did not shoot anyone, and was not near the gun at the time of the shootings. Mr. Gray also submitted an affidavit from himself stating that he was not the shooter.

On June 5, 2018, the trial court denied Mr. Gray's motion for leave to file a delayed motion for a new trial. (ECF No. 9-1, Exhibit 21). On June 29, 2018, Mr. Gray, through new counsel, timely filed an appeal to the Eighth Appellate District. (ECF No. 9-1, Exhibit 22). In his appellate brief, Mr. Gray raised the following assignment of error:

1.    The trial court abused its discretion in denying Defendant's motion for leave to file a motion for a new trial on the basis of newly-discovered evidence.

(ECF No. 9-1, Exhibit 23).

On May 2, 2019, the Eighth Appellate District affirmed, holding that Mr. Gray had not established by clear and convincing evidence that he was unavoidably prevented from timely discovering the purported new evidence and that he did not file his motion within a reasonable time after learning of Mr. Davis' identity. (ECF No. 9-1, Exhibit 26). The court also held that the affidavits of Rufus and Mr. Gray were self-serving and deficient. Finally, the court concluded that the information in the affidavits was not plausible in light of the forensic evidence establishing that Mr. Gray touched the roof of the victim's car,

-8-

something that would have been impossible if the version of events depicted in the affidavits were accurate.

Mr. Gray filed a motion for reconsideration, which the Eighth Appellate District denied on May 31, 2019. (ECF No. 9-1, Exhibits 27, 29). On June 10, 2019, Mr. Gray, acting pro se, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 9-1, Exhibit 30). In his memorandum in support of jurisdiction, Mr. Gray raised the following proposition of law:

> 1. The trial court abused its discretion and violated Appellant's due process rights, when it denied Appellant's motion for leave to a [sic] motion for new trial on the basis of newly-discovered evidence.

(ECF No. 9-1, Exhibit 31). On July 23, 2019, the Ohio Supreme Court declined to accept jurisdiction over the appeal. (ECF No. 9-1, Exhibit 33).

### E. Second Motion for New Trial

On April 20, 2020, Mr. Gray, through new counsel, filed a second motion for leave to file a motion for a new trial. (ECF No. 9-1, Exhibit 34). Mr. Gray supported the motion with Mr. Davis' affidavit, along with an affidavit from a family friend stating that Rufus had recently confessed to the shootings, as well as an affidavit from Rufus stating that he intentionally killed the victims after one of them struck him in the face with a gun.

On January 12, 2021, the trial court denied Mr. Gray's motion, holding that the proffered evidence was not newly discovered, that Mr. Gray was not unavoidably prevented from discovering it, and that his claims were barred by res judicata. (ECF No. 9-1, Exhibit 36). On February 9, 2021, Mr. Gray, through new counsel, timely appealed to the Eighth Appellate District. (ECF No. 9-1, Exhibit 37). In his appellate brief, Mr. Gray raised the following assignments of error:

> 1. The trial court abused its discretion and violated Appellant's due process rights, when it denied Appellant's motion for leave, finding Appellant failed to show by clear and convincing evidence he was unavoidably prevented from discovering the evidence that appellant introduced in his motion for new trial, when the evidence on it's [sic] face demonstrated such unavoidableness.

> 2. The trial court abused its discretion when it denied Appellant's motion for leave to file a motion for new trial without conducting an evidentiary hearing, as Appellant submitted documentation that on it's [sic] face supported Appellant's claim that he was unavoidably prevented from discovering said evidence earlier.

3.      The trial court abused its discretion when it ruled Appellant's 4/20/2020 motion for leave to file a motion for new trial was barred by the doctrine of res judicata.

(ECF No. 9-1, Exhibit 38). On October 14, 2021, the Eighth Appellate District affirmed, holding that Mr. Gray's arguments were barred by res judicata because he raised them in his prior appeal. (ECF No. 9-1, Exhibit 41). The court also held that Mr. Gray was not unavoidably prevented from discovering the alleged new evidence. Mr. Gray filed a motion for reconsideration, arguing that res judicata should not apply because he was actually innocent. (ECF No. 9-1, Exhibit 42). On July 1, 2022, the court denied Mr. Gray's motion for reconsideration. (ECF No. 9-1, Exhibit 43).

On November 22, 2021, Mr. Gray filed a notice of appeal to the Ohio Supreme Court. (ECF No. 9-1, Exhibit 44). In his memorandum in support of jurisdiction, Mr. Gray raised the following propositions of law:

1.      The trial court abused its discretion and violated Appellant's due process rights, when it denied Appellant's motion for leave, finding Appellant failed to show by clear and convincing evidence he was unavoidably prevented from discovering the evidence that Appellant introduced in his motion for new trial, when the evidence on its face demonstrated such unavoidableness.

2.      The trial court abused its discretion, when it denied Appellant's motion for leave to file motion for new trial without conducting an evidentiary hearing as Appellant submitted documentation that on its face supported Appellant's claim that he was unavoidably prevented from discovering said evidence earlier.

3.      The trial court abused its discretion when it ruled Appellant's 4/20/2020 motion for leave to file a motion for new trial was barred by the doctrine of res judicata.

(ECF No. 9-1, Exhibit 45). On February 15, 2022, the Ohio Supreme Court declined to accept jurisdiction over the appeal. (ECF No. 9-1, Exhibit 46).

F.      Federal Habeas Action

On January 30, 2023, Mr. Gray, acting pro se, filed his 28 U.S.C. § 2254 habeas petition. (ECF No. 1). Mr. Gray's habeas petition raises four grounds for relief:

1.  Petitioner's due process rights were violated, when the trial court denied petitioner's motion for new trial considering the evidence attached hereto.

2.  Trial Court abused its discretion and violated Petitioner's due process when it denied Petitioner's Motion for Leave to File Motion for New Trial without conducting an evidentiary hearing in light of evid.

3.  Trial Court abused its discretion when it ruled Petitioner's 4/20/2020 Motion for Leave to file a Motion for New Trial was barred by the doctrine of res judicata.

4.  The trial court abused its discretion when it denied Petitioner's Petition for Postconviction Relief in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Id. The Warden filed an answer/return of writ on July 10, 2023.  (ECF No. 9). Mr. Gray filed a traverse on August 16, 2023. (ECF No. 10).

(Report and Recommendation at pp. 2-12.)

On January 28, 2025, the Magistrate Judge issued her Report and Recommendation. (Docket #11.)  The Magistrate Judge recommends that the Petition be dismissed on the basis that none of Grounds for Relief raised by Mr. Gray are cognizable in a habeas proceeding.  (Report and Recommendation at pp. 22-25.)  On March 10, 2025, Mr. Gray filed his Objection to the Magistrate Judge's Report and Recommendation.  (Docket #14.)

**Standard of Review for a Magistrate Judge's Report and Recommendation**

The applicable standard of review for a magistrate judge's report and recommendation depends upon whether objections were made to that report.  When objections are made to a report and recommendation of a magistrate judge, the district court reviews the case de novo.  FED. R. CIV. P. 72(b) states:

The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

### Conclusion

This Court has reviewed the Magistrate Judge's Report and Recommendation *de novo,* considering the Objections of Mr. Gray. The Magistrate Judge thoroughly examined the Record in this case, and presents an exhaustive and meticulous analysis of all of Mr. Gray's Grounds for Relief. The Court agrees with the Magistrate Judge's determination that none of Mr. Gray's Grounds for Relief are cognizable in a habeas proceeding.

The Report and Recommendation issued by Magistrate Judge Jennifer Dowdell Armstrong (Docket #11) is hereby ADOPTED in its entirety.

Mr. Gray is currently incarcerated at Lake Erie Correctional Institution. Misty Mackey is the acting Warden of the Lake Erie Correctional Institution. Therefore, the Court substitutes Warden Misty Mackey for Warden Douglas Fender as the Respondent in this proceeding.

The Petition for Writ of Habeas Corpus (Docket #1) is DISMISSED.

This case is hereby TERMINATED.

### Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, the Court must determine whether to grant a certificate of appealability as to any of the claims presented in the Petition. 28 U.S.C. § 2253 provides, in part, as follows:

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from --

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

-12-

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

In order to make "substantial showing" of the denial of a constitutional right, as required under 28 U.S.C. § 2255(c)(2), a habeas prisoner must demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983).)

Where a district court has rejected the constitutional claims on the merits, the petitioner must demonstrate only that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack*, 529 U.S. at 484. Where the petition has been denied on a procedural ground without reaching the underlying constitutional claims, the court must find that the petitioner has demonstrated that reasonable jurists could debate whether the petition states a valid claim of the denial of a constitutional right *and* that reasonable jurists could debate whether the district court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons stated in the Magistrate Judge's Report and Recommendation, a reasonable jurist could not conclude that denial of the Petition is in error or that Mr. Gray should

-13-

be permitted to proceed further.  Accordingly, the Court declines to issue a certificate of
appealability.

      IT IS SO ORDERED.

                                       DONALD C. NUGENT
                                       United States District Judge

DATED:___March 26, 2025___

-14-